public moneys out of his hands, he can clearly succeed only by proving that the public is indebted to him the amount he seeks, and that it is money which, if collected by him, he would have been entitled to retain. The case is no wise barred by the fact that the defendant charged these commissions against the government, and received credit for them at the treasury as due and payable by him to the plaintiff. The form of rendering and paying his accounts would determine nothing as to the point litigated; but, aside of that, the secretary of the treasury forbid the payment of the money to the plaintiff until his right to it should be decided at law.

This, then, compels the plaintiff to proceed upon his legal rights alone, and, as I understand the law, he has failed to show a title in himself to these moneys as against all other parties and the liability of the defendant to him therefor. His right upon the law, as I understand it, is no way enlarged by his resignation. The commission is appointed by law to the collector, in reward of services rendered as collector, and the consideration or object of the allowance is not affected by the payment being made after he ceases to hold office. Nor does the defendant become responsible upon any personal relationship between the parties. He was no agent of the plaintiff by his appointment or by designation of law, in opposition to or paramount to the authority of the treasury department. The whole face of the bond is due to the government. It is made subject, on being paid, to a certain commission which the law says "it shall be the duty of the collector in office to collect." This collecting, however, can be nothing more than subtracting the per centage from such public moneys while in his hands. The act does not direct the collector to pay such commissions to his predecessor, and he cannot accordingly be regarded as standing in relation of a private agent to such predecessor, or bound to account to him for the money.

Supposing the government refuses to credit these commissions to his account current, claiming the control of them as part of the public moneys, could he be allowed to set up the right of his predecessor in bar of such authority, and thus intercept the rights of the government as against his predecessor? Manifestly he would be bound to pay over the entire fund as being part of the revenue collected by him. So if his accounts are nominally approved, with the allowance of a credit of the commissions to the resigned collector, the secretary of the treasury would have the power to revoke such approval so far as to require that the money should not be paid out by the collector until a clear right to it at law was established by his predecessor. The defendant could not be regarded as holding it merely as money had and received, in the ordi-

nary acceptation, for the plaintiff, but as a public officer, having it in deposit for the government or the plaintiff, whichever had the legal right to it. Upon these views of the case, I am of opinion that the law is against the right of the plaintiff to recover, and that the motion for a new trial must be denied.

HOYT (DORR v.). See Cases Nos. 4,007–4,009.

HOYT (HADDEN v.). See Cases Nos. 5,890 and 5,891.

HOYT (HALL v.). See Case No. 5,934.

## Case No. 6,809.

HOYT v. The JOSHUA BARKER.

[See Case No. 7,547.]

## Case No. 6,810.

HOYT v. SPRAGUE et al.

[12 Chi. Leg. News, 25; 8 Reporter, 616.] [1]

Circuit Court, D. Rhode Island. 1879. [2]

PARTNERSHIP—SETTLEMENT OF ESTATE.

An administrator of a deceased partner has power to settle with the surviving partners on such terms as in the exercise of good faith and reasonable diligence he may choose to accept. He is the personal representative of the deceased partner, and has all his powers of settlement, except that being trustee for the next of kin, he cannot give away anything.

[Cited in Nellis v. Pennock Manuf'g Co., 38 Fed. 380.]

[This was a bill in equity by William S. Hoyt against Amasa Sprague, William Sprague, Fannie Sprague, Mary Sprague, the A. & W. Sprague Manufacturing Company, and Zachariah Chaffee, assignee of said company.]

LOWELL, Circuit Judge. The hardships of the case, on the one side, that the complainants should have lost a large estate by bad investments, not originally made by them; and on the other, that the creditors of the manufacturing company should lose a large part of the property to which they gave credit, have been brought to our notice by counsel. As these considerations balance each other, there will be the less difficulty in considering the case in its purely legal aspects. The complainants seek to set aside or open the account taken by the referees and acted on by the parties in 1865, on the ground that it was false and fraudulent, and that its method was illegal; and whether the account is opened or not, they ask that the amount justly due to the complainants in 1865 may be declared not to have been lawfully invested in the stock of the A. & W. Sprague Manufacturing Compa-

[1] [8 Reporter, 616, contains only a partial report.]

[2] [Affirmed in 103 U. S. 613.]